### SHERMAN W. CADWELL
*v.*
### NATHANIEL BROWN.

1. TRUSTEE — *liability for violating the trust.* Where B. conveyed real estate to C., to be sold by the latter, to pay a debt owing him by the former; and at the time the conveyance is made, the parties agree upon the price at which the property shall be sold; and C. sells the property for only half of the sum agreed upon, without the consent of B., the trustee will be held to have violated the trust, and must account for the sum for which they agreed the property should be sold.

APPEAL from the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

This was a suit in chancery, commenced by Nathaniel Brown, against Sherman W. Cadwell, to enforce a specific performance of a contract to convey the N. $\frac{1}{2}$ S. E. 23, 20 N., 9 E., and for an account. It appears that on the 7th day of July, 1860, defendant executed to complainant a bond for the conveyance of the premises in controversy, for which the complainant was to pay him the sum of $1,120, of which he paid at the time $330. That some time in the month of October following, by arrangement of the parties, Cadwell conveyed to one Henry Smith, twenty acres off of the west side of the tract, and Smith paid to him the sum of $280, on the purchase money owing by complainant to defendant.

That some time in the month of February, 1861, complainant transferred to defendant a note on Arvin Brown for $95, and defendant agreed to take a threshing machine in Ohio, if he liked it; also conveyed to defendant a certain steam mill in Portage county, Ohio, with the agreement that defendant should go to Ohio, and sell it for not less than $800, and out of the proceeds of such sale, retain the balance due to him on the eighty acre tract of land, and pay to complainant the residue. That defendant went to Ohio, and leased the mill property for one year for $150. That he applied this rent to the discharge of alleged liens upon the property. That in May, 1862, he sold the same for four hundred dollars. It also appears that defendant, after his return from Ohio, stated that he intended to keep the mill property, that money was worth only seven per cent. interest, and the property would rent for more, and he could make it profitable.

The cause was brought to a hearing on the bill, answer, replication and proofs, when the court below rendered a decree in favor of complainant.

The court, in the decree, stated an account between the parties in which the following items were credited to Cadwell, and charged against Brown, to wit:

| | |
|---|---|
| Principal of note................................ | $490.00 |
| Interest on same................................ | 12.00 |
| Amount paid, by Cadwell, on Brown's debts in Ohio, | 120.00 |
| Amount of taxes paid on mill property............. | 18.00 |
| On account of traveling expenses to Ohio.......... | 36.00 |
| Making a total of credits to Cadwell, of........ | $676.00 |

And the following items were credited to Brown and charged against said Cadwell, to wit:

| | |
|---|---|
| On account of property conveyed to Cadwell, as specified in exhibit attached to bill of complaint..... | $800.00 |
| Note against Arvin Brown sold Cadwell............ | 95.00 |
| Making a total of credits allowed Brown........ | $895.00 |

Which would leave a balance due Brown from Cadwell, of $219, upon which interest at six per cent. is allowed from March 1, 1861, up to date of decree, making the amount then due Brown, including interest, $268.40, which amount Cadwell is decreed to pay Brown, together with costs, etc. Cadwell is also decreed to specifically perform the condition of his bond and convey to Brown the lands therein described, except the twenty acres conveyed to Smith.

To reverse that decree, defendant prosecutes this appeal, and assigns for error: that the bill should have been dismissed; that the decree should have been for the defendant; that from the evidence, the court should have decreed that complainant should pay defendant the sum of $255.90 before defendant should convey the land; the evidence of complainant does not support the bill; and the decree is not warranted by the allegations of the bill.

Mr. W. F. IVES, for the Appellant.

Mr. JAMES K. EDSALL, for the Appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

This was a bill in equity filed by appellee to compel appellant to convey to him certain land, which he alleges he purchased and paid for according to the terms of the contract. It appears that appellee agreed to give for the land the sum of $1,120, and paid in hand $330, and for the balance he gave two notes, due at different times, one for $300, and the other for $490. Afterwards appellee sold twenty acres of the land to one Smith, for the sum of $280, which was applied as a credit on the first-named note. After the maturity of these notes, and in the latter part of February or the first of March, 1861, appellee being the owner of a steam mill and the land on which it was situated, in Ohio, and a note on one Arvin Brown for the sum of $95, an agreement was entered into by which the steam mill property was conveyed to appellant, to enable him to sell the property and apply the proceeds to the payment of appellee's notes, and to pay the balance to appellee.

The evidence is clear and satisfactory that it was the understanding of the parties at the time the deed was executed, that appellant was not to sell the mill property for less than eight hundred dollars. Appellee expressed himself as unwilling to sell for less than that sum, and appellant received the deed with that understanding. This was testified to by the attorney who drew the deed. He also says that appellant agreed to take the note on Brown, as he knew him to be solvent. Appellant also stated, that he would take the threshing machine, if it was as good as appellee represented it. This witness further states, that it was agreed that appellee was to pay appellant's expenses in going to Ohio to attend to the business.

Appellant went to Ohio, and rented the mill for one year for the sum of $150, paid the taxes on the mill property, and paid $120 on a security debt owing by appellee, and then returned home. After the lease had expired, he sold the mill property for $400, and made a deed to the purchasers. After an account was stated, the court below decreed a conveyance of the land

purchased by appellee from appellant, except the twenty acres sold to Smith, and that he pay to appellee the sum of $268, the amount found to be due after discharging the notes given for the lands. In stating the account, the court allowed appellee $800 for the mill property, and $95, the amount of Brown's note. Against this he was charged the balance due on the purchase of the Lee county lands, $502; the sum paid his creditors in Ohio, $120; the amount of taxes paid on the mill property, $18; and traveling expenses of appellant, $36; leaving a balance due appellee, of $219, which, with interest to the date of the decree, makes the sum for which the decree was rendered.

Appellant insists that he is only chargeable with the sum received on the sale of the mill property, and not with the sum of eight hundred dollars. On the other side, it is urged, that he made the property his own, and should account for it at the price limited by appellee, when it was conveyed to him. This was the view taken by the court below. Opposed to the view of the case adopted by the court below is the testimony of Smith. He testifies, that in a conversation between the parties, about four days before appellant went to Ohio, it was understood he was to get the best price he could for the property. He thinks this conversation was before the deed was made. That it was the calculation that appellant was to do the best he could, and appellee would be satisfied. He also states, that he heard appellee say to appellant that he "had done just as he told him to do in the first place." On cross-examination, this witness says, that appellee, in this last conversation, said he was satisfied, if appellant had done the best he could, but heard nothing said about the sale of the property. He also says, that appellant offered to restore the property to appellee if he desired it. It is manifest that the expression of satisfaction by appellee could not have referred to the mill property, as appellant offered to return it. If it had then been sold, he would not probably have made such an offer.

Stewart also testified, that appellant was to sell the property for the best price he could get. That he recollected to have

heard appellee place no restrictions on the price. He also states, that in the conversation it was understood that appellant was fully authorized, by power of attorney, to dispose of the property.

In support of the decree, it appears that appellee was unwilling to sell for less than eight hundred dollars, and appellant received the deed with that understanding. It also appears, that he refused. to ratify a sale of the property, made by an agent, at five hundred dollars, of which he apprised appellant when he received the conveyance. That appellant, when he arrived in Ohio, claimed to have purchased the property, and leased it for one year. · Also, on his return, he said he intended to keep it, as he could "make a good thing of it." And he sold it for one-half of the sum limited, so far as this evidence shows, without consulting with appellee.

From all the evidence in the case, we are unable to see that appellant pursued his instructions in making the sale. The attorney, who drafted the deed, is clear and explicit that it was not to be sold for less than eight hundred dollars, and that appellant received it on these terms. He, of all others, had the best opportunity of knowing the intention and understanding of the parties. His attention was particularly called to the transaction; he was interested in knowing what the parties desired to be done, as he had to reduce it to legal form, according to their agreement. This was not a loose, casual conversation, but was their agreement, that they were communicating to their attorney.

The conversation spoken of by Smith evidently was before the sale of the property. It must have referred to the leasing of the mill, the payment of the taxes, and the payment of appellee's debts. And the conversation referred to by Smith must have been before the deed was executed to appellant, or he misunderstood what was said.

From a careful examination of the evidence, it would seem that appellant determined to make the property his own. But if such was not the case, he acted in bad faith, by a violation of the trust imposed upon and accepted by him, and having

done so, it would be inequitable and unjust to permit him to cast the burthen of the loss upon appellee. He was not bound to accept the trust, but having done so, he was bound to execute it in good faith. Having violated it, he must sustain the loss. If unwilling to sustain the loss, he should have reconveyed the property, or have procured appellee's consent to sell for the price received. Choosing, however, to disregard the terms of the trust, he, by selling the property as he did, rendered himself liable to account for eight hundred dollars, the limited price.

We are therefore of the opinion that the decree of the court below must be affirmed.

*Decree affirmed.*